I think we have the proper case here. This is, I hope, the people of the state of Illinois versus Tally, correct? And the case number is 5-12-349. Counsel may proceed. My name is Maggie Heine and I represent the defendant, Mr. Philip Tally. Mr. Tally was sentenced to 10 years in prison following a felony trial on aggravated battery. I'll be focusing my oral presentation on the issues directly related to the bar and self-defense offense, but I'm happy to take any questions. This case began when the police were called to a house party at 1030 on a Saturday night to break up a fight involving several subjects and weapons. A 911 dispatch from about 20 minutes later has a witness describing the group now as baseball bats hitting each other. Because of a court-ordered limitation on eyewitness testimony, the trial was forced to proceed as though there were only one bat and one fighter, namely Mr. Tally, hitting the complainant. Because defense counsel missed the discovery deadline, Mr. Tally was barred from arguing self-defense and from testifying to any evidence that would support that defense. It's uncontested that in an earlier confrontation between the same two men, the complainant held Mr. Tally down. According to the state's own witness, it took two men to pull the complainant off of Mr. Tally. At this point, Mr. Tally left the party in his girlfriend's car, only to return later when his girlfriend called him for car back. Now, there was a second confrontation when Mr. Tally returned, and that's the confrontation that led to the criminal charges in this case. According to Mr. Tally's interrogation video, at some point during the second confrontation, he thought he saw the complainant reaching for what he thought was a bat. Now, in light of the eyewitness reports of a brawl... That was in the interrogation video right after he was arrested? That's correct. Okay. In light of the eyewitness reports of a brawl of multiple bats, as reported in the police reports, and the complainant's earlier aggression towards Mr. Tally, the critical question in this trial should have been, who is the aggressor in the second confrontation? My point is, when you say that was in the interrogation video, I take it you're saying that to point out that self-defense was an issue all along? Right, just that the issue of there being a second weapon in near proximity has always been a part of this case. And the problem with the trial that happened is that Mr. Tally was never allowed to offer any answer to the question of who was the initial aggressor. The ban on Mr. Tally's defense was caused by an abusive discovery sanction, and it could have been entirely avoided if counsel had prepared for trial. So I'm going to turn first to the trial court's choice of sanction. Counsel admittedly violated discovery deadlines when he disclosed on the morning of trial that he would be arguing self-defense. It was this discovery violation that led the trial court to exclude all evidence of self-defense as a discovery sanction, and I included any reference to a second back. In barring the defense and denying defense counsel's motion to continue, the court said, it's a drastic remedy, but I'm not going to allow a defendant to game the system. The rules are there for both sides. Now, a trial court has discretion to sanction a party for failing to meet discovery deadlines, but exclusion is considered a very serious and a last resort sanction, even in civil cases. This is because exclusion undermines the truth-seeking function of trial. Now, to bar an entire defense in a criminal case is very rare. It's been repeatedly disapproved of by the appellate courts, and that's even in cases where there are other defenses available to the defendant, and they're actually argued at trial. In this case, the bar was to Mr. Tally's only defense, felony charges, and no exceptions were made to the bar on evidence. That includes for Mr. Tally's testimony. So to be very clear about what that meant in practice, and this is at page 165 in the record, Mr. Tally took the stand in his own defense, and he began to describe the events of that night in his own words, and as he got to the point of describing the second confrontation near the bonfire between himself and the complainant, at a certain point, he was cut off by the state's objection based on the motion in limine, barring evidence of self-defense. At that point, Mr. Tally was not allowed to give further testimony about what he saw from his own point of view on that night. Is there any evidence, any place of a second bat? So Mr. Tally mentioned a second bat. Other than Mr. Tally took. In the police reports, whoever it is that called 911 at 10.50 p.m. described a group with baseball bats hitting each other. Now is this after he came back? It is after he came back, and I also believe that the complainant may have testified that he thought there might be bats around, but that testimony wasn't developed because there was an objection, and they were told to move on. So the Supreme Court, when reviewing an order that excludes evidence in a criminal case, focused on the severity of the exclusion, the materiality of the excluded evidence, and the prejudice to the state. Here, the severity really can't be overstated. Eyewitnesses to the scene were not permitted to give testimony on whether there was a second bat, whether the complainant ever reached for it, when he may have reached for it. That testimony was simply not allowed to come out in trial. Mr. Tally wasn't allowed to testify to that. Counsel was not allowed to cross-examine occurrence witnesses brought by the state about that. And then the two late disclosed occurrence witnesses of the defense were entirely barred, despite the fact that they had been included on the state's own list in an earlier disclosure. The materiality of the evidence is also very clear. In light of the court's bar on self-defense, defense counsel entirely waived the opening argument, and in closing, he reiterated that he could not even make an argument on Mr. Tally's behalf without self-defense. I mean, and Mr. Tally was never allowed to give his version of events in any way. I think that shows the materiality of this exclusion. Notably, the state did not object to a continuance, which would have easily dispelled any prejudice to the state. In fact, it's unclear that there was prejudice that really needed to be dispelled. First, the state already knew all the facts relevant to self-defense, because, again, it was in the police reports. They knew about Mr. Tally's claim that there was another bat in the vicinity at the time of the second confrontation. And both the defense witnesses had been included in the state's— Well, I thought you said he only said he was reaching for a bat. That's correct. Thought he was reaching for a bat. That's correct. I think the testimony—or the comment that he makes in the interrogation video, and it's unclear to me how the events broke down, but at some point he thought the complaint was reaching for a bat during their second confrontation. But it never said he got the bat or used the bat. We don't know the details of when he— I mean, you're talking about the statement he gave before the discovery violation. No. I mean, in the statement he does not say that he got the bat or that he swung the bat at him. None of that would be necessary to argue self-defense, of course. Are you aware of any Illinois court of review decision that upheld a complete bar of a defense? I'm not talking about a witness, but a defense. So, I am not. I am not. In the cases that I cited in my brief, there will be, like, the instruction for a certain defense will be barred, but the evidence will still be allowed to go before the jury. Or another defense will still be there. In one case, the defense of compulsion was available, and the evidence for necessity was there, but necessity hadn't been disclosed. So, the court wanted to just bar the necessity instruction, and the appellate court still said, you can't do that. You have to be allowed to argue your defense. I think, importantly, the state strategy would not need to change to accommodate Mr. Talley's defense. The state strategy was just focused on developing a timeline of what exactly happened at this bonfire, and the state was just focused on the fact that Mr. Talley, in fact, left the party before returning with a bat for the second confrontation. This isn't like an alibi defense where there's a surprise witness that no one knows about who's going to place the defendant in a completely different location. There you can understand how the state would need to change their evidence to deal with that surprise witness. Here, the evidence would have remained the same. You're talking about occurrence witnesses, talking about what happened outside of our bonfire between two people. The only difference is that Mr. Talley would have been allowed to offer his version of events. This case would have been very easy to continue. It was a bench trial, so there's no jury to accommodate. There's three local civilian witnesses called by the state. It was simple. It was a one-day trial, wasn't it? It was a one-day trial. The trial court made no attempt to figure out how long the state would arguably need to dispel any unfairness or surprise. And I think the truth behind why the court never inquired is that the court was focused on punishing the defendant for what it saw as rule-breaking and gamesmanship. The court was angry about what it perceived as an attempt at trial by ambush coming not from defense counsel but from the defendant himself. And the problem with ruling in that way is that discovery sanctions are never meant to punish. They're intended to propel compliance with discovery and to increase the fairness of trial. So here we have a sanction which is so harsh that it actually perversely has the opposite effect that discovery sanctions are intended to have. It limited factual development at trial as a punishment. It was disproportionate to whatever minor inconvenience there was to the state. And the end result is that it denied the defendant a fair trial. I think it's also important that the trial court was blaming the wrong person here. It was defense counsel who had a duty to investigate self-defense and prepare defense for his client. If counsel had properly reviewed discovery and prepared for trial, he would have seen those police reports referencing multiple brawls at a bonfire, one with multiple bats. He would have heard Mr. Calley describing the complainant from this criminal charge earlier assaulting him. In light of that, he would have disclosed self-defense and started interviewing witnesses to figure out who actually saw what happened there. But he never did that. Trial strategy can protect a lot of decisions that attorneys have to make when they're preparing a case, but it can't protect the failure to prepare and do basic investigation. I think this is that rare case where the counsel's statements demonstrate that this problem wasn't a bad judgment call. This was an actual lack of preparation. That's not strategy, and it shouldn't receive a presumption of reasonableness. So if you look at what counsel told the court when the morning trial was to begin, he said that he had just learned about the existence of a second bat, and as a result, he didn't argue self-defense. But again, the existence of a second bat was all over discovery. Counsel also admitted that he knew of the witnesses who were with Mr. Calley at the time of his arrest, but he made no attempt to interview them. In counsel's words, his investigator was going to move this to the front burner, and that's on the morning of trial. Of course, there's no way for defense counsel to know if those witnesses saw the bonfire for the simple reason that he did not bother to ask them. Now, what does this mean? What they saw at the bonfire, you're arguing, after he came back or before he left? After he came back. These witnesses were the ones who were, they accompanied Mr. Calley back to the party, and they were with Mr. Calley in the car when he left the party. So we actually don't know what they saw, whether they were eyewitnesses to the event itself, because no one interviewed them. Would it make any difference if he saw somebody with a gun at the party, so he goes, gets a, did he take a cab home or something? How did he get home? I forgot. He took his girlfriend's car home. Oh, his girl, okay. And then he got another gun. He comes back and shoots somebody. Is that the same set of facts? In other words, he saw a bat at the party, allegedly. We don't get that in. But goes home and gets a bat. Where's the self-defense is what I'm trying to find out. At the time he came back with a bat? So when he was first at the party, he, in his words, he was assaulted by three people. According to the complainant, he was held by the complainant, and two people had to pull them off of Mr. Calley. He left the party. He was called back by his girlfriend because he had her car and he had left her at the party. But he picked up a bat. So he left. He left. I'm sorry, Your Honor. Didn't he have a bat when he, he didn't have a bat when he was there, but he had a bat when he came back. That's right, Your Honor. Unless I'm trying to change this and say, well, let's make it a weapon, a gun. I mean. Would that make a difference or is that the same word? I don't think it would make a difference. If he went and he brought a gun and he was fully licensed to have, carry a firearm. Right. I don't know the details of all of that. If he brought that merely for self-defense on any chance that someone who had assaulted him earlier in the evening comes and tries to jump him again, I think it's completely reasonable to think that he would bring a gun for self-defense and to argue that he never used that gun until he saw the person who had earlier assaulted him coming at him in a way that made him reasonably believe that imminent unlawful force was going to be used against him. The core problem in defense counsel's preparation is that counsel was ready to bind to the state's version of events without any independent investigation or adversarial testing. As a result of counsel's not preparing this defense, self-defense didn't get disclosed until the morning of trial and that left the bar on Mr. Talley's entire defense. In the end, this case should be remanded for a new trial for the simple reason that Mr. Talley was clearly not allowed to defend himself against felony charges, not in his own words, not through witnesses, and not through cross-examination. As a result, he respectfully asks that we reverse his conviction and remand this for a new trial before a different judge. There are no questions? Thank you, counsel. Your Honors, counsel. The court's choice of sanction is reviewed under an abusive discretion standard. And as will be discussed, there is an abuse of discretion. First off, I want to point out that the court did not sanction counsel. The counsel did nothing wrong. What the court focused in on was the fact that the defendant knew what happened and had failed to communicate to his attorney what had happened. Now, what was it that counsel was supposed to discover? Well, the first thing the defendant talks about is that police report, which is not evidence. Excuse me. Yeah. Let me ask you the same question. Are you aware if a court of review has ever upheld a complete bar of a defense? I mean, I know witnesses. There are cases where a witness is barred and so forth. Yeah. But to say you cannot put on any evidence of self-defense or insanity or, you know, whatever it is. No, Your Honor, I'm not. But this is a sanction against witnesses. And so, I mean, it has the practical effect of barring us. The trial court said I'm barring you from using self-defense. Correct. Well, these witnesses, yes. Uh-huh. Now, so no, I am not. Okay. But that practical effect is going to obtain in many cases. And the United States Supreme Court has found that such sanctions are constitutionally permissible. And so for that, that would be my argument to answer that question. And that was barring a witness, though. I mean, technically, that's what that case was about, was barring a witness. Right. Yeah. It's a pretty severe sanction. Yes, it is a severe sanction. And the United States Supreme Court discusses that, but it weighs it and says it's not a matter of, you know, prejudice to the state. That's not really the issue. The issue is the integrity of the judicial process itself. And to sort of the court's duty to police whether presumptively perjurious testimony gets to be before the jury and whether it should be, you know, it's a policing act more than a punishing act. Well, the trial court, I know, laid this on the defendant rather than defense counsel, and, of course, you know, representing the state, you want to make the same argument. But is it true that in his original recorded statement he mentioned something about a bat? Let's go back and look. First, there's that police report. Now, that's not evidence, and it's just excited people calling in. But it's in discovery, though. It's in discovery. Yeah, yeah. And defense counsel sees it. But counsel is talking to the defendant, and counsel represents to the court that he went over this, and he investigated, and he wanted there to be a defense of self-defense. And he questioned the defendant, and he went over the statute with the defendant. And what he said was, I just was looking for some evidence of an imminent danger. And he said he couldn't find it. And the defendant did not tell him anything about the victim having a bat during the time of the attack. During the time of the attack. Now, that's a different thing. Oh, okay. Until the night before trial, okay? So this is what the defendant said in his statement was, and that's People's Exhibit 2, which was played for the jury. So some of this evidence is going to get before the jury, okay? That first he was beaten at this party, and then he left, and he makes no mention of a bat up until this point. None. And then he comes back with the bat that he obtained at his house. And then he hits Grimes. He said, good, not like I wanted to. And then he says, at that point, Grimes, the victim, steps off to the side. How far? We don't know. Steps off to the side and gets a bat. So after the fact. So there's nothing in the defendant's statement that would give counsel a reason to investigate self-defense. And I want to also add that in the PSI, this defendant basically makes the same statement, and he abandons this idea that Grimes had a bat at the time. Because in the PSI, he abandons this whole claim that the victim had a bat at the time. Now, so the court, in weighing whether this, you know, 11th-hour evidence, 11th-hour testimony that hasn't been passed over in discovery, and it was two months after the people made their discovery motion and eight months after the defendant was charged, that he comes up with this new account that contradicts his statement that's recorded and was admitted into evidence. It's not until then he comes up with this statement. And he abandons it after. So there's only, you know, if the defendant got up there and testified. Well, do we know what it was that he told his attorney new? Do we know what it was? I mean, we don't know what it was that he allegedly told his attorney the night before that was new, do we? Yeah. Counsel was uncomfortable. He didn't want to breach attorney ploy and privilege. So that's why it's kind of dicey. We don't know specifics. But, no, we don't know specifics except that we know the defendant, for the first time, claimed that the victim had a bat at the time of the attack. That's what we know. And then there was something about Tiffany Dixon and MacArthur Heron. These are the two people that were in the car that brought him back to the party when he had the bat. Heron gave a statement, which was given over in discovery. And in Heron's statement, he doesn't say anything about witnessing the attack. All he said was to police is, yeah, the bat in the car was the defendant's bat, and he put it in there. That's all Heron says. So, you know, there's nobody that we know of, according to any presentation to the court, that witnessed the event and could corroborate the defendant's story that the victim did have a bat. I mean, this is the problem about when you exclude something, then there's nothing in the record about what it would have been. Correct, correct. And, you know, if you've tried a lot of cases, you know that a lot of cases turn out a lot different in the evidence than what you thought it was going to be going in based on discovery. I know, but right now, at this point in time, the court is presented with 11th hour witnesses. And that brings up another thing. It's a bench trial. It's a one-day bench trial. There's three citizen witnesses. Why didn't the judge just say, I'm going to set this over for 60 days? What difference would it have made? And the delay's on you, defendant, because of the way this came down. But, you know, I'm going to give the state plenty of time to investigate what you're claiming here. You know, we wouldn't have this problem. Well, you know, according to Taylor, it's not just the prejudice to the people in preparation of the case. The real issue is the integrity of the judicial process. And at this point, and, yes, the court could make a credibility determination in deciding what sanction to impose. And no continuance is going to change the fact that the defendant is presumptively lying about the victim having a bat. Well, let's put it all out there and let it be cross-examined. Let's forget about presumptively. Let's find out who's lying. Let's put everybody on the stand and cross-examine them and let a trier of fact decide it. And so we get to be the first panel in the appellate court to uphold the complete bar of defense. You know, like I said. It's pretty rough. I mean, I'm serious when I say it's pretty rough because, I mean, there's no better defense in a criminal case than self-defense. Yeah, yeah. You've got a better chance of convincing a trier of fact of that than any, you know, anything else just about. Well, okay. There are other factors to consider, and I want to remind the court that the judge below is being judged by an abuse of discretion standard, and that's a very deferential standard. Now, the court below in fashioning this sanction, you know, just made a judgment looking at the defendant's prior statement and the 11th hour that what the defendant wanted to present was perjurious testimony, and the court below protected. But what about that kind of prejudgment of testimony he hasn't even given? Well, you know, it's not like we don't know what he had to say because he was already going to have a statement. Well, we don't know what he didn't say in the original statement. I mean, people get on the stand, they give a statement, and then they get on the stand all the time and add to it or whatever, and then the prior effect is to decide, you know. The defendant himself in his recorded statement, which would be admissible substantively, said that the victim, after he hit him in the head, then the victim stepped to the side and picked up a bat and stood there. So what I'm saying is that doesn't exclude saying something else about what happened at the time, you know. I mean, I don't understand this presumptively pejorious statement. You know, I'm not going to let you, the judge says, I'm not going to let you testify because I'm going to presume you're going to perjure yourself, even though you're here defending a criminal case. How does that work? As counsel said during the hearing on this matter, he said, I'm not going to make my client take the stand. Now, we don't know. We don't know that the defendant was going to take the stand or would have taken the stand. No, we don't because the judge barred the defense anyway. So we don't know what would have happened. He could have. And we also don't know what Dixon and Herron would have said, except for Herron, you know, there's no indication that they even witnessed the event, that they even got out of the car. Isn't the integrity of the process better served by finding out what all those people would have said? You know, Your Honor, I think that many of the questions that we have about this is better settled in a post-conviction proceeding. But at this point in time, I don't think that this court can find that the court below committed an abuse of discretion, given the facts that it had. And I don't think that at that point in time, the court could have made it any better by granting a continuance. I really don't think anything would have changed. It's still, let's just assume that the defendant was going to get up and say, the victim had a bat when I went to attack him. You know, just merely holding a bat, that also doesn't really constitute an imminent danger, because if you're just standing there with a bat, but somebody comes up and whacks you in the head with a bat, is that self-defense anyway? Is that an imminent danger if he's not coming at him or threatening him? I don't think that this court can find that the court below committed an abuse of discretion in the way that it handled this case. And so unless there are any further questions. Thank you. Rebuttal. So I just wanted to clarify a couple of things. I believe counsel stated this was just a sanction against witnesses, that there was no witness to this event, because Tiffany Dixon, MacArthur Herron, we don't know what they saw. And this was not just a sanction against witnesses. Mr. Calley himself was not permitted to fully testify about what happened that evening. His own testimony in his criminal trial was cut short. And, of course, cross-examination was not allowed of another witness, or not about the detail of the second bat. The presumptive counsel also pointed out that defense counsel was not told by the defendants about there being a second bat. But, again, there's an independent duty to investigate. This was contained in discovery. Counsel says he never heard about the existence of a second bat. So we know for certain that counsel never spoke with the defendant about the existence of a second bat. And that's a problem right there. You should have known. You should have been talking to him about that fact. And then the presumptive perjury comes out of the case of Taylor. But there the presumptive perjury was a witness who wanted to testify that he had told the defendant the complainant had a gun. And then it came out of cross-examination. The witness didn't actually meet the defendant until two years later. So he was basically warning a stranger that someone had a gun. And counsel had also lied about when he met the witness. So we had a lot of factors that said this is perjurious testimony. And there it was going before a jury. So there were special integrity of the process considerations to keep that testimony out. Here none of those are true because we don't have that evidence of perjury, and this is a bench trial. We have a trial court that got angry and was closed-minded too early in the process and didn't allow the facts to develop the way they need to at a criminal trial. Thank you. Thank you, counsel. The court will take the case under advisement and we will recess until 9 o'clock tomorrow morning. All rise.